IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES P. CALAFIORE, et al. | : | |
| v. | : | Civil No. CCB-04-3402<br>Civil No. CCB-05-1435 |
| WERNER ENTERPRISES, INC., et al. | : | |

...o0o...

**MEMORANDUM**

These cases stem from an automobile accident in 2001, in which a vehicle operated by James P. Calafiore was in a rear-end collision caused by a tractor trailer operated by Robert Genthner, on behalf of his employer Werner Enterprises, Inc. ("Werner"). In one case, Calafiore has brought a claim for negligence against Werner and Genthner seeking $1 million in compensatory damages, while in its companion case Calafiore's employer Brunswick/Life Fitness and its insurer Insurance Company of the State of Pennsylvania have brought a subrogation claim for negligence against Werner. The two cases have been consolidated for trial.

Now pending before the court in this case is a motion for summary judgment by the defendants, in which they argue that Calafiore should be barred by the doctrine of judicial estoppel from bringing his negligence claim, given that he failed to list the potential claim as an asset in his bankruptcy petition. The motion is opposed by Calafiore and the subrogation plaintiffs.[1] Oral argument was heard by the court on March 1, 2006. For the following reasons, the motion will be

---

[1] As confirmed by the parties at the oral hearing, however, resolution of the present motion would in no way affect the claims of the subrogation plaintiffs.

denied without prejudice. The court finds that the plaintiff should be barred by judicial estoppel from seeking certain forms of damages, but not others; therefore, he will be permitted to proceed, and the court will revisit the issue if and when necessary. In addition, the interests of Calafiore's creditors might be a factor considered by the court in ultimately resolving the issue.

## I. Background

On October 25, 2001, Calafiore was driving a motor vehicle northbound on Interstate 95 before the Ft. McHenry Tunnel in Baltimore, Maryland, when his vehicle was struck from behind by a tractor trailer, which was operated by Genthner, on behalf of Werner.[2] As a result of the collision, Calafiore suffered serious physical injury.

On or about August 21, 2003, Brunswick/Life Fitness and its insurance company, The Insurance Company of the State of Pennsylvania, filed a subrogation suit on behalf of Calafiore against Werner in Baltimore City Circuit Court. This suit was removed to federal court on May 26, 2005.

On December 5, 2003, Calafiore and his wife filed a Chapter 7 Voluntary Petition for Bankruptcy in the Bankruptcy Court for the District of Maryland, with Dennis M. Jaworski as counsel. (Defs.' Mot., Ex. B., Bankr. Pet.) Calafiore indicated in his deposition that while preparing for the bankruptcy filing, he discussed his potential claim against the defendants with Jaworski and even considered the possibility of retaining Jaworski to represent him in the personal injury suit.

---

[2] To the extent there is any dispute over the material facts relevant to this motion for summary judgment, they will be viewed in the light most favorable to the plaintiffs. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

(Deposition of James P. Calafiore, at 38-39.) In their schedule of assets, the Calafiores listed a $10,000 workers' compensation claim, but did not list a potential claim against Genthner and Werner. (Bankr. Pet., Schedule B.)[3]

On March 22, 2004, Bankruptcy Judge Schneider granted the Calafiores a complete discharge from their debts. (Defs.' Mot., Ex. E.) On that same day, Calafiore apparently signed a complaint form for a civil suit against Genthner and Werner, and on April 1, 2004, that complaint was filed in Baltimore City Circuit Court by Jeffrey L. Komin as counsel for Calafiore. (Defs.' Mot., Ex. D.) The case was removed to this court on April 10, 2004.[4]

II. Analysis

A. Judicial estoppel

The Fourth Circuit has characterized the doctrine of judicial estoppel as "an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts – to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W.Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995)). The court has developed the following test for the doctrine:

> In order for judicial estoppel to apply, (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been

[3] The plaintiff does not present a complete explanation for why he failed to list the claim, but suggested in his deposition that he merely signed the papers prepared by his bankruptcy counsel without examining them closely. (Calafiore Dep., at 39.)

[4] Richard W. Reische was substituted as plaintiff's counsel on December 20, 2004.

> accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir. 1998) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997)). While the Fourth Circuit apparently has not addressed the application of judicial estoppel to a case in which a debtor fails to schedule a potential claim in a bankruptcy filing but later asserts that claim, other circuits have done so, as have state courts and lower courts in this circuit. *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988); *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002); *In re USinternetworking, Inc.*, 310 B.R. 274 (Bankr. D.Md. 2004); *Winmark Ltd. P'ship v. Miles & Stockbridge*, 693 A.2d 824 (Md. 1997).

Federal bankruptcy law requires a debtor to list in the initial petition, *inter alia*, a "schedule of assets." 11 U.S.C. § 521(1). Official Form 6 for Schedule B requires a debtor to list "all personal property of the debtor of whatever kind," and property of a bankruptcy estate is defined broadly to include "all legal or equitable interests of the debtor in property as of commencement of the case." 11 U.S.C. § 541(a)(1). Courts have interpreted this definition to include "all causes of action that could be brought by a debtor." *USinternetworking*, 310 B.R. at 281 (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). The duty to disclose such claims continues for the duration of the bankruptcy proceeding. *Id.* at 282 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999)).

Therefore, where a debtor fails to list a potential claim in a bankruptcy petition – or fails to amend that petition when the claim becomes known – the doctrine of judicial estoppel could potentially bar the debtor from bringing that claim in a later proceeding. Regarding the first three

factors of the Fourth Circuit's test, courts have held that (1) bringing a given claim is inconsistent with omitting that claim from a bankruptcy petition; (2) possessing such a claim is a position of fact; and (3) bankruptcy courts rely on the presence or absence of potential claims in their adjudication. *See, e.g., USinternetworking*, 310 B.R. at 281-85; *see also Coastal Plains*, 179 F.3d at 209-10 (declining, however, to adopt the Fourth Circuit's requirement that the position be factual and not legal).

There is no genuine dispute that the first three factors of the test have been met here. The ultimate issue is thus to what extent the plaintiff acted intentionally in omitting the potential claim from his bankruptcy petition. To address this issue, the court must closely examine the legal test for intent in this context, and the nature of Maryland's bankruptcy exemption for personal injury compensation, which forms the foundation of the plaintiff's argument that he acted inadvertently.

B. Intent

As the Fourth Circuit's test above indicates, judicial estoppel should only apply where the plaintiff acted intentionally in taking inconsistent positions, and "will not be applied where the party's inconsistent positions resulted from inadvertence or mistake." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196-97 (4th Cir. 1998); *see also Browning*, 283 F.3d at 776; *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir.1999); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir.1997). Indeed, the Fourth Circuit has repeatedly noted that intent – more precisely, whether the

plaintiff "intentionally misled the court to gain unfair advantage" – is the "determinative factor" in the application of judicial estoppel to a particular case. *Lowery*, 92 F.3d at 223 (citing cases).[5]

In cases involving bankruptcy, courts have developed a fairly consistent standard, in the absence of direct evidence of intent, for inferring whether a debtor acted intentionally or inadvertently in omitting a potential claim from a bankruptcy petition. Defendants cite to an illustrative decision from the Southern District of Mississippi, which held that "a debtor's failure to satisfy its statutory duty to disclose is 'inadvertent' only when, in general, the debtor lacks knowledge of the undisclosed claims or has no motive for its concealment." *Kamont v. West*, 258 F.Supp.2d 495, 500 (S.D. Miss. 2003) (citing *Coastal Plains*, 179 F.3d at 210); *see also Browning*, 283 F.3d at 776 (same); *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294 (11th Cir. 2003) ("[D]eliberate or intentional manipulation can be inferred from the record, where the debtor has knowledge of the undisclosed claims and has motive for concealment.") (citation omitted). In other words, even if a debtor had full knowledge of a potential claim, the failure to disclose that claim in a bankruptcy petition could nonetheless be deemed inadvertent where he lacked a motive for concealment. If his undisclosed claim would have added assets to the bankruptcy estate, however, he will usually be deemed to have had a motive to conceal those claims.

In their attempt to prove that the plaintiff acted intentionally in failing to list his potential claim, the defendants focus on the fact that the plaintiff had knowledge of the undisclosed claim

---

[5] It is important to note, however, that although the plaintiff cites *McNewman v. Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir. 1996) for the proposition that an explicit finding of bad faith is necessary for the application of judicial estoppel, the Fourth Circuit has never adopted this requirement. In other words, application of the doctrine does not turn on whether the plaintiff consciously engaged in chicanery.

when he filed for bankruptcy. In particular, they point to the plaintiff's discussion of the claim with his bankruptcy counsel, and also place heavy emphasis on the fact that he filed the present case in state court shortly after he and his wife were discharged from bankruptcy.

The plaintiff does not dispute that he knew of the undisclosed claim; rather, he argues that he acted inadvertently in omitting it on his petition. He contends that because any compensatory damages from this case would have been shielded from his creditors by Maryland law, he lacked a motive to conceal that claim, and should accordingly not be estopped from bringing the claim now. To assess his argument, the court must turn to Maryland's bankruptcy exemption for personal injury compensation.

C. Maryland personal injury exemption

The U.S. Bankruptcy Code provides for a schedule of exemptions of debtor's assets from the claims of bankruptcy creditors. 11 U.S.C. § 522. States may opt out of the federal exemption schedule and implement a schedule of their own, which Maryland has done. *See In re Butcher*, 125 F.3d 238 (4th Cir. 1997); Md. Cts. & Jud. Proc. § 11-504. Maryland law specifically exempts from a creditor's reach "money payable on the event of sickness, accident, injury or death of any person, including compensation for loss of future earnings...." Md. Cts. & Jud. Proc. § 11-504(b)(2). The purpose of this provision is "withhold[ing] from creditors funds necessary to recompense the debtor for injuries to his physical person, to make the debtor whole in the eyes of the law, and to restore human capital to the extent monetarily possible." *Butcher,* 125 F.3d at 241.[6]

[6] Courts have noted of § 11-504(b)(2), however, that "there is no legislative history to review to definitively ascertain the subsection's meaning." *In re Royal,* 165 B.R. 802, 804 (Bankr. D.Md.

Accordingly, the plaintiff argues that because any compensatory damages he receives for the injury at issue in this case would have been exempt in his bankruptcy case, he lacked any motive to conceal that claim. The court agrees, but only partially. To the extent any aspect of the damages the plaintiff seeks would have been exempt in the bankruptcy case, the plaintiff lacked the necessary motive to conceal his claim, and he will not be judicially estopped from seeking those kinds of damages. *See McClain v. Coverdell & Co.*, 272 F.Supp.2d 631, 641-42 (E.D.Mich. 2003) (holding that because the $800 the plaintiff failed to list on her bankruptcy petition would have been exempt as personal property, she lacked a motive to conceal that money and should not be judicially estopped from claiming the money was hers); *Browning*, 283 F.3d at 776 (declining to apply judicial estoppel where the plaintiff debtor would not receive a windfall as a result of its failure to disclose its claims, and thus lacked a motive for concealment); *cf. USinternetworking*, 310 B.R. at 285 (applying judicial estoppel because any damages for the plaintiff's undisclosed breach of contract claim would have been available to its creditors, and thus it possessed "both knowledge of the claim and a motive to conceal the claim for its own benefit").

A close examination of the caselaw on Maryland's personal injury exemption indicates, however, that only certain portions of the plaintiff's potential damages award in this case would be exempt, while other portions would not be. As discussed below, courts have found that while damages for pain and suffering and loss of future earnings are exempt under § 11-504(b)(2), damages for lost wages, prepetition medical expenses, injuries to property, and punitive damages

---

1994).

are not exempt.[7] To the extent any aspects of the plaintiff's plea for damages fall into nonexempt categories, he did have a motive to conceal. Accordingly, it would be reasonable to find Calafiore judicially estopped from seeking nonexempt forms of damages for his personal benefit, but permit him to seek those items of damages that would have been exempt under § 11-504(b)(2).[8]

In *Butcher*, the Fourth Circuit upheld the bankruptcy court's determination (as affirmed by this court) that § 11-504(b)(2) was facially constitutional, and reasonable as applied to a structured personal injury settlement valued at $4.5 million. 125 F.3d at 242. The appeals court held that the Maryland exemption "implies a payment that counterbalances injury, intending that the amount of money be equal to the value of the injury, *but no greater*." *Id.* at 241-42 (emphasis added). Accordingly, the court emphasized that, even though the plaintiffs had sued the defendants for compensatory and punitive damages, the bankruptcy judge had concluded that the settlement payments were entirely compensatory and not punitive. *Id.* at 242.

An earlier decision, *Niedermayer v. Adelman*, 90 B.R. 146 (D.Md. 1988) – cited by the *Butcher* court – explained the rationale behind § 11-504(b)(2): to the extent personal injury damages

---

[7] As counsel confirmed at the hearing, Calafiore does not seek any punitive damages here.

[8] While, in the ordinary case, judicial estoppel bars an entire claim, the court sees no reason why the doctrine cannot be used to bar the plaintiff from seeking some forms of money damages but not others. Given the potential severity of the remedy – i.e. completely preventing a plaintiff from asserting an otherwise meritorious claim – courts have been careful in barring certain forms of relief while allowing others stemming from the same claim, depending on the presence or absence of a motive for concealment. *See, e.g., Barger*, 348 F.3d at 1297 (applying judicial estoppel to the plaintiff's undisclosed claim for monetary damages, but not to her claim for reinstatement based on the same alleged employment discrimination, given that the latter would not have added to her bankruptcy estate).

aim to make an injured person whole, attaching that money would equate to attaching the person himself to satisfy a debt, which is not permitted. *Id.* at 148. The court held that:

> The test in determining whether a claim for "injury of the person" falls within the exemption of this statute is whether the claim is for injury to property of the debtor or whether it is for injury to the person proper. If the latter, it will be exempt.

*Id.* at 149. Accordingly, the court held that while a claim for damages to the plaintiff's psyche (e.g. mental anguish and damage to reputation) was exempt, claims for punitive damages and for breach of contract were not. *Id.*

The decision in *In re Hurst*, 239 B.R. 89 (Bankr. D.Md. 1999), extended *Niedermayer*'s reasoning in holding that the debtor's claim for lost wages was not exempt under § 11-504(b)(2). The court reasoned that the right to receive wages due is a property right, and does not involve compensation for injuries to the person proper. *Id.* at 91. Furthermore, had the plaintiff not been injured, the unspent wages would have been property of the bankruptcy estate. Accordingly, "if she could exempt lost wages simply because she was injured, she would receive a windfall to which she would not have been entitled had she not been injured." *Id.* at 91-92. As *Butcher*, *Niedermayer*, and *Hurst* emphasize, the policy of the exemption is only to allow the debtor to keep money that was intended to make him whole, not to bestow him with a windfall.

The court in *In re Hernandez*, 272 B.R. 178 (Bankr. D.Md. 2001), applied the logic of *Hurst* to a debtor's personal injury settlement received for medical expenses incurred prior to his bankruptcy petition, and held that these damages likewise were not exempt under § 11-504(b)(2). The court explained through the following example that exempting such an award also would result in a windfall for the debtor: a victim of a car accident incurs $100,000 in medical bills, receives

$100,000 for those bills as part of a settlement, and then files for Chapter 7 bankruptcy. If the bankruptcy court were to relieve him of his legal obligation to repay the medical bills but exempt the settlement money, then the plaintiff would receive a windfall of $100,000. *See id.* at 180. While the *Hernandez* court was dealing with medical expenses that occurred in their entirety prior to the filing of the bankruptcy petition, the court's logic would apply *a fortiori* to any medical expenses that occur prior to discharge. It is clear, however, that the court's reasoning would not apply to money received for medical costs incurred after discharge, given that the court could not have discharged the plaintiff from the legal obligation to pay those expenses.[9]

D. <u>Creditors' interests</u>

Finally, the court notes that several decisions, including two by the Maryland Court of Appeals, have accorded great weight to the interests of the bankruptcy debtor's creditors in deciding whether to apply judicial estoppel to a case such as this one. *See Adams v. Manown*, 615 A.2d 611 (Md. 1992); *Winmark Ltd. P'ship v. Miles & Stockbridge*, 693 A.2d 824 (Md. 1997); *see also Oneida*, 848 F2d at 420-24 (Stapleton J., dissenting) (quoted by *Adams*, 615 A.2d at 623-24). These opinions have reasoned that barring a former bankrupt from pursuing a valid claim that he failed to schedule would result in a windfall for the defendant, while preventing the creditors from receiving money to which they would have been entitled had the claim been listed. *See Adams,* 615 A.2d at 617-18 ("Manown has successfully presented this case as if the only alternatives were either to give

---

[9] Because the parties have not had the opportunity to brief the issue, I am not making a final determination that *Hurst* and *Hernandez* are correct in their identification of damages that are not exempt.

Adams the benefit of his fraud or to give Manown the benefit of a windfall. What has become obfuscated through two levels of courts is that those who are entitled to benefit from the judicial determination of Manown's indebtedness to Adams are the creditors of Adams."). In the *Adams* case, for example, the court fashioned a remedy whereby the trial proceedings would be stayed to allow the bankruptcy trustee to determine whether Adams' bankruptcy estate should be reopened in order to administer the existing judgment as an asset. *Id.* at 619-20.

It is significant to note that in both *Adams* and *Winmark*, the Court of Appeals raised this issue *sua sponte*. *See Adams*, 615 A.2d at 617-18; *Winmark*, 693 A.2d at 826. This is perhaps due to the fact that, while a defendant in such a case might have an incentive to argue against the creditors' interests, neither party possesses an incentive to argue in favor of those interests.[10]

III. <u>Conclusion</u>

Given that this opinion has raised issues and caselaw not fully addressed by the parties, and because the exact nature of the plaintiff's damages claim has not been presented to the court, the court will refrain from conclusively resolving the defendants' arguments at this juncture.[11] At the very least, however, the court finds that the doctrine of judicial estoppel should not bar the plaintiff

---

[10] The defendants here argue that the plaintiff should not now benefit from Maryland's personal injury exemption because his creditors lacked an opportunity during the bankruptcy proceedings to dispute a requested exemption based on his potential claim. The defendants have not gone so far as to argue, however, that those creditors should actually benefit from any nonexempt recovery in this case.

[11] The court notes that the plaintiff's original state court complaint listed $107,125 in special damages, comprising $39,000 in medical bills, $7,500 in property damages, and $60,625 in lost wages. (Compl., Circuit Court Complaint Form.)

from pursuing his claim in its entirety. Accordingly, the court will deny the defendants' motion without prejudice, and allow the plaintiff to proceed. Either party, or the court acting *sua sponte*, may raise these issues again at a later time.[12]

A separate Order follows.

March 9, 2006
Date

/s/
Catherine C. Blake
United States District Judge

[12] The *Adams* court, for example, found no difficulty in allowing for the substitution of the bankruptcy trustee as the real party in interest even after the jury had determined liability and damages. 615 A.2d at 619-20. In this case, however, notice to the bankruptcy trustee before the case proceeds to trial might be the most reasonable course.