IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INSURANCE CO. OF STATE OF PA. and BRUNSWICK/LIFE FITNESS t/o/u and t/u/o JAMES P. CALAFIORE and JAMES P. CALAFIORE | * * * |
| Plaintiffs | * |
| v. | * Civil Action No.: CCB-05-1435 |
| WERNER ENTERPRISES, INC. and ROBERT GENTHNER | * * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MOTION IN *LIMINE***

Defendants, Werner Enterprises, Inc., and Robert Genthner ("Werner and Genthner"), by and through their undersigned attorneys, Andrew T. Stephenson, and Franklin and Prokopik, pursuant to the Federal Rules of Civil Procedure, and in accordance with the Scheduling Order, move this Honorable Court before trial, and before the selection of a jury, for an Order in *limine*, ordering the Plaintiffs, Insurance Co. of State of PA and Brunswick/Life Fitness t/o/u and t/u/o James P. Calafiore and James P. Calafiore ("Plaintiffs, Calafiore"), and their attorneys, and witnesses, not to state, discuss, mention or bring in any way to the jury's attention, directly or indirectly, at any stage of these proceedings, reference to any of the evidence and/or argument described below:

1. That Werner Enterprises, Inc., or Robert Genthner, are insured.

2. That Plaintiff, Calafiore, is or may be required to repay or otherwise satisfy, and liens out of the proceeds of any judgment.

3. Testimony from any of Plaintiffs' expert witnesses.

4.     Any claim for bodily injury or medical treatment.

5.     Any claim for future economic damages.

6.     Any claim for future economic damages for lost wages.

7.     Any claim for future economic damages for medical expenses.

8.     Any claim for future economic damages for loss of household services.

9.     Any claim for permanent Injury.

## INTRODUCTION

This is a civil action premised on the tort of negligence wherein Plaintiffs, Calafiore, seek compensatory damages for injuries allegedly sustained as a result of a motor vehicle accident that occurred on October 25, 2001. Defendants, Werner and Genthner, have voluntarily stipulated to responsibility and the only issue remaining to be decided is the amount of damages, if any, to which Plaintiffs, Calafiore, are entitled.

## ARGUMENT

**I.     Collateral Source Issues**

Defendants, Werner and Genthner, consent to Plaintiffs', Calafiore's, Motion in *Limine* to Exclude Evidence of Workers' Compensation Benefits pursuant to the Collateral Source Rule. By the same token, and for the same reasons, Defendants, Werner and Genthner, expect that Plaintiffs will not attempt to suggest or otherwise infer that insurance coverage is available to cover any verdict that might be entered. Moreover, given that Defendants are agreeing not to affirmatively raise the workers' compensation issue, it is expected that Plaintiffs will not imply that there are any liens that will have to satisfied out of any verdict rendered. *Dennison v. Head Cpnstr. Co.*, 54 Md. App. 310, 458 A.2d 868 (1983); *Plank v. Summers*, 203 Md. 552, 102 A.2d 262 (1954).

**II.    Expert Witness Designation**

Plaintiffs, Calafiore, were required to designate expert witnesses in accordance with Fed. R. Civ. P. 26(a)(2) by no later than July 14, 2005. *See* proposed Order (Docket No. 29), filed on June 17, 2005, and paperless Order (Docket No. 30) dated June 23, 2005, approving the same. This was the expert designation deadline proposed by Plaintiffs, Calafiore, following a request to modify the initial Scheduling Order (Docket No. 23), which was issued on January 20, 2005, which set the original date for Plaintiffs, Calafiore's, expert designation on March 11, 2005. Plaintiffs, Calafiore's, purported expert designation was not timely as it was first sent to Defendants, Werner and Genthner, via facsimile, on July 15, 2006. *See* letter dated July 15, 2005, from Plaintiffs' counsel attached hereto as Exhibit A. See Plaintiffs' (purported) Expert Designation attached hereto as Exhibit B. Subsequently, Plaintiffs, Calafiore, propounded what purported to be an Amended Expert Designation on October 4, 2005, which is attached hereto as Exhibit C. Plaintiffs' Amended Expert Designation, which was also untimely, added one expert, Alberto Felix (a vocational consultant) who had not been previously named in the original Expert Designation.

In addition to the untimeliness, the expert designations are procedurally deficient as they fail to meet the requirements of Fed. R. Civ. P. 26(a)(2)(B). Although Plaintiffs do not specifically discriminate, arguably, Charles C. Park, M.D. (neurosurgery), Leo Korotki, M.D. (physical medicine and rehabilitation), and Shawn, M. Peffall, M.D. (primary care physician), are treating physicians who would be covered by Fed. R. Civ. P. 26(a)(2)(A). Whether or not that is found to be the case, certainly, Constantine Misoul, M.D. (orthopedic surgeon), Louis J. Maccini (economist), and Alberto Felix (vocational rehabilitation) were specifically retained to provide expert testimony in the case and are subject to the requirements of Fed. R. Civ. P. 26(a)(2)(B). That being the case, Plaintiffs

have not produced the type of "report" the requirements of which are specifically set forth in Fed. R. Civ. P. 26(a)(2)(B).

Defendants, Werner and Genthner, agreed to extend the time for Plaintiffs to produce their experts' reports to September 15, 2005. *See* letter dated July 11, 2005, from Plaintiffs' counsel attached hereto as Exhibit D. Plaintiffs produced the first report of Dr. Maccini on September 15, 2005. *See* letter dated September 15, 2005, from Plaintiffs' counsel attached hereto as Exhibit E. *See* "Economic Loss" report prepared by Dr. Maccini, September, 2005, attached hereto as Exhibit F. Plaintiffs produced an untimely second report of Dr. Maccini on October 12, 2005. *See* letter dated October 12, 2005, from Plaintiffs' counsel attached hereto as Exhibit G. *See* Dr. Maccini's supplemental report dated October 10, 2005, attached hereto as Exhibit H. Plaintiffs' produced an untimely "Vocational Assessment" of Alberto Felix on October 5, 2005. *See* letter dated October 4, 2005, from Plaintiffs' counsel, attached hereto as Exhibit I. See Vocational Assessment dated September 28, 2005, attached hereto as Exhibit J. Finally, the "Independent Medical Evaluation" of Dr. Misoul, dated May 6, 2003, was produced by Plaintiffs well in advance of the expert designation deadline and is attached hereto as Exhibit K.

Putting aside the merits of the opinions and the sufficiency of the factual basis, none of the aforementioned reports from the Fed R. Civ. P. 26(a)(2)(B) experts, Dr. Misoul, Dr. Maccini, or Alberto Felix, include "the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *See* Fed R. Civ. P. 26(a)(2)(B). Moreover, these disclosures were to have been made "at the times and in the sequence directed by the court." *See* Fed

R. Civ. P. 26(a)(2)(C).

To the extent that the Fed. R. Civ. P. 26(a)(2)(A) experts, Dr. Park, Dr. Korotki, and Dr. Peffall, are found to have been timely designated, their testimony should be restricted to the four corners of their respective medical records.

### III.     Future Economic Loss

Defendant, Werner's, Interrogatory No. 26 to Plaintiff, Calafiore, states: "Itemize in detail all expenses and monetary losses or damages allegedly resulting from the occurrence involved herein that were incurred by you or on your behalf to include, but not limited to, property damage, medical bills and any lost wages." Plaintiff, Calaifore's Answer thereto, in pertinent part, provides "$39,045.38" for past medical expenses and "LOST WAGES $36,875.00." *See* Plaintiff, Calafiore's, Answers to Interrogatories attached hereto as Exhibit L. There is no mention of any future economic loss in Answer to Interrogatory No. 26, and this Answer has never been supplemented even as of this date. As such, and in light of the discovery violation, Plaintiffs, Calafiore, should not be permitted to subsequently present additional claims for additional damages at trial.

The procedural defect aside, there is insufficient evidentiary support and/or factual basis to substantiate the three aspects of future economic loss claimed: (i)  future medical expenses; (ii) future lost wages; (iii) loss of household services.

As to the future medical expenses, which are proffered in the Proposed Pre-Trial Statement to be $21,184.80, Plaintiffs have never produced any documentation, including but not limited to any medical records or expert reports, that substantiate this claim. Simply put, Defendants have no idea how or why this figure has been reached and are, therefore, completely incapable of challenging the validity of the same.

With regard to the claim for future lost wages, Plaintiff's treating medical providers have long since released him to return to work. *See* November 20, 2001, record from Gary W. Pushkin, M.D., attached hereto as Exhibit M: "I have release him to return to work on Monday, November 26, 2001, after the holiday." Indeed, Plaintiff's employment payroll records from Bally Total Fitness indicate that he worked from January 4, 2002, through until April 17, 2002, at which time he "has decided to leave Ballys and return to Life Fitness", see attached hereto as Exhibit N. According to the January 23, 2002, report of Kathleen P. Louzon, CRNP, which is attached hereto as Exhibit O, Plaintiff had "started working out again" at that time. There are also repeated references to "upper body workouts" in Ms. Lorenzo's subsequent reports. Following the surgery, Dr. Park does caution that Plaintiff should not return to a heavy lifting job but encourages that he can still find a more sedentary job. *See* October 10, 2002, report of Dr. Park attached hereto as Exhibit P. On November 15, 2004, Dr. Peffal notes that Plaintiff is working on completing school, *see* attached hereto as Exhibit Q. On April 4, 2005, Dr. Peffal notes that Plaintiff is back working in the fish industry, *see* attached hereto as Exhibit R. On April 22, 2005, Dr. Korotki, notes that Plaintiff is currently working as a courier, *see* attached hereto as Exhibit S. On April 26, 2005, Dr. Korotki's report reflects that he feels good working out on the Bowflex, *see* attached hereto as Exhibit T. On June 9, 2005, Plaintiff informs Louis Halikman, M.D., that he is working out on the Bowflex at home, *see* attached hereto as Exhibit U. Plaintiffs' payroll checks show that he was working from April 8, 2005, through July 16, 2005, for Sea Life Custon Aquarium Services, LLC, *see* attached hereto as Exhibit V, where, according to his deposition transcript at page 9, lines 9-10, attached hereto as Exhibit W, he cleaned and maintained fish tanks. Finally, according to records from Ballys, Plaintiff has continued to utilize his gym membership throughout 2003 and in 2004 and he has renewed his membership in

2005, *see* attached hereto as Exhibit X.

The only evidence submitted in this case indicating that Plaintiff is incapable of working is a "Vocational Assessment" authored by Alberto Felix. Mr. Felix is a vocational rehabilitation expert who has never treated Plaintiff and only interviewed him once. The report itself demonstrates that there is no medical evidence to support an opinion that Plaintiff will be unable to work in the future. Mr. Felix ultimately relies on the fact that Plaintiff's continued use of Oxycontin is causing some limitations. From this, Mr. Felix makes an apparent leap of faith to reach the conclusion that "it is **doubtful** that Mr. Calafiore will be able to keep a permanent, full time employment opportunity because of the multiple challenges that he is experiencing. " (Bold emphasis added). Although "doubtful" is insufficient from an evidentiary standpoint, there is clearly no factual basis for this bald conclusion. The limitations imposed by Plaintiff's continued use of Oxycontin are self imposed and voluntary as Plaintiff is, by his own admission, addicted to the prescribed narcotic. *See* Plaintiffs' deposition transcript at page 35, lines 2-6, attached hereto as Exhibit W.

Similarly, the claim for loss of household services is lacking in any sort of definitive factual predicate. Dr. Maccini's report simply states that he "understand[s] that testimony will show that Mr. Calafiore is now able to do 50% of the cooking and the meal cleanup, 40% of the house cleaning, 50% of the shopping, 25% of the child care, 30% of the home repairs, but none of the yard work that he performed prior to the onset of his disabilities." There is simply no medical evidence that specifically speaks to these numbers and no medical expert has been designated accordingly. It should be noted that Plaintiff currently lives with his mother-in-law which generally calls into question the entire basis for this claim. The evidentiary sufficiency aside, this is not a valid claim for economic damages as Plaintiff is not suggesting that he has had to hire anyone to perform these tasks

or that is an actual economic loss. At best, Mrs. Calafiore could potentially pursue a loss of consortium claim but, for whatever reason, such a cause of action has not been pursued and Mrs. Calafiore has not even been named as a witness expected to be called to testify at trial. As this claim is currently framed, it is, at best, an aspect of non-economic damages. Using an expert to place a theoretical evaluation on a speculative assumption, should not be allowed to be presented to the jury for their evaluation as it is likely to be far more prejudicial that probative.

Under Maryland law, future damages cannot be recovered if future consequences upon which damages are premised are mere possibilities. Future damages must be established with reasonable certainty, and must not rest on speculation or conjecture. See Lewin Realty III, Inc. v. Brooks, 138 Md. App. 244, 771 A.2d 446 (2001).

## IV.     Bodily Injury and Permanency

Although there are numerous other accidents, incidents, and circumstances, which Defendants will point to as other potential causes of the Plaintiff's alleged injuries, even Plaintiff's own medical expert, Constantine Misoul, M.D., admits that his permanent partial disability rating has "some pre-existing component from a previous work related injury that he had on 02/01/00." *See* "Independent Medical Evaluation" of Dr. Misoul, dated May 6, 2003, attached hereto as Exhibit K. Additionally, the medical record is absolutely replete with references to Plaintiff's preexisting degenerative disk disease. Even Dr. Korotki was forced to change his original position of causally relating the Plaintiff's injuries 100% to the subject occurrence during his recent video taped deposition from June 28, 2006:

> Examination by Mr. Reisch:
> Q.   Is there any evidence in records that you have seen or that have been presented here today to the extent that you could review them that any

>   pre-exisiting degenerative disk disease including osteophytes had any ongoing symptoms - presented any ongoing symptoms for Mr. Calafiore prior to the accident at issue?
>   A.   Okay. Well, I need to address that in two ways. Number one, based on the report of Dr. Misoul and that Workman's Compensation judgment, I did indicate – I do understand that there may have been some pre-existing things to a mild degree.

See page 87, lines 8 through 18, of video deposition of Dr. Korotki, M.D., attached hereto as Exhibit Y.

>   With regard to the issue of apportionment of injury, Maryland law is clear:
>
>   The plaintiff may recover for the aggravation of a pre-existing injury or infirmity. But if the defendants are the cause of an aggravation of a pre-existing injury, then the defendants are only liable for that portion that they actually aggravate; they are not liable for the entire amount, they are liable for the portion that they aggravate. **The burden is on the plaintiff** in this case to demonstrate what portion of the injury, if any, was aggravated by the accident as opposed to what was pre-existing. (Bold emphasis added).

*Seites v. McGinley*, 84 Md. App. 292, 297 cert. denied 321 Md. 385 (1990). Plaintiff has not offered any evidence to meet his burden of proving the apportionment. Indeed, Plaintiff has not even proffered what that apportionment may be. As such, given the lack of evidence, the jury will be left to speculate as to what this might be.

WHEREFORE, Defendants, Werner Enterprises, Inc., and Robert Genthner, respectfully request that this Honorable Court before trial, and before the selection of a jury, enter an Order in *limine*, ordering the Plaintiffs, Insurance Co. of State of PA and Brunswick/Life Fitness t/o/u and t/u/o James P. Calafiore and James P. Calafiore, and their attorneys, and witnesses, not to state, discuss, mention or bring in any way to the jury's attention, directly or indirectly, at any stage of these proceedings, reference to any of the evidence and/or argument described above.

Respectfully submitted,


_____/s/_____
Andrew T. Stephenson
(Federal Bar No.: 26504)
Franklin & Prokopik
Two North Charles Street, #600
Baltimore, Maryland   21201
(410) 230-3612
*Counsel for Defendants*
*Werner Enterprises, Inc., and Robert Genthner*


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of June, 2006, a copy of Defendants' Motion in Limine was electronically filed and sent via email and regular mail to:

| | |
|---|---|
| Richard W. Reische, Esquire | Wilson K. Barnes, III, Esquire |
| 800 North Charles Street | Semmes, Bowen & Semmes |
| Suite 400 | 250 West Pratt Street |
| Baltimore, Maryland 21201 | Baltimore, Maryland 21201 |
| *Attorney for James P. Calafiore* | *Attorney for Insurance Co. of the State of PA and Brunswick/Life Fitness t/u/o and t/u/o James P. Calafiore* |


_____/s/_____
Andrew T. Stephenson